IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JESSE BAKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-01260-BP |
| | § | |
| GENERAL MOTORS LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court in this case based on diversity of citizenship are Defendant General Motors LLC's Motion for Summary Judgment with Brief and Appendix in Support (ECF Nos. 41, 42, 43), Plaintiff Jesse Baker's Response to the Motion with Brief and Appendix in Support (ECF Nos. 50, 51, 52), and Defendant's reply to the Motion (ECF No. 56). After considering the pleadings and applicable legal authorities, the Court **DENIES** the Motion.

**I.    BACKGROUND**

General Motors LLC ("GM") operates an assembly plant in Arlington, Texas. ECF No. 42 at 7. GM often contracts with various entities, including Central Conveyor Company ("Central Conveyer"), who employed Jesse Baker ("Baker") at the time of the incident at issue. ECF No. 42 at 7. On September 3, 2021, Baker was preparing tools before beginning work the next day on a conveyor belt. ECF Nos. 42 at 7. He was working in what was known as the plant's "fabrication shop." ECF Nos. 42 at 7. As he went about his work, Baker's supervisor, whom Central Conveyer also employed, retrieved an empty job box and asked Baker to take it to the site where people pulling chains would be working the next day. ECF No. 42 at 7. This particular job box had a broken lock, so Baker's supervisor instructed him to weld a hasp onto the box. *Id*. Baker did not

open the box or otherwise inspect it before using a grinder to work on the hasp. ECF No. 42 at 8. At some point after Baker began to use the grinder, an explosion occurred. *Id.* Baker was knocked unconscious and sustained injuries. ECF No. 42 at 8. He now sues GM to recover damages for his injuries. ECF No. 1 at 9-10.

## II. LEGAL STANDARDS

### A. Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *See Slaughter v. S. Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

When a movant carries his initial burden, the nonmovant must then show that the entry of summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S.

at 249–50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Id.* at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The Court must view summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories and requests for admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242–43. The Court will grant the movant's motion for summary judgment only if it meets its burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56; *Duckett*, 950 F.2d at 276.

    **B.**    **Texas Civil Practice and Remedies Code**

Chapter 95 of the Code applies only to a claim:

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

Tex. Civ. Prac. & Rem. Code § 95.002. If Chapter 95 applies, a property owner is liable to independent contractors for failure to provide a safe workplace only if the property owner (1) exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or to receive reports; and (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn. *Id*. § 95.003.

A defendant property owner has the initial burden to establish that Chapter 95 covers a plaintiff's claim. *See Weekly Homes, LLC v. Paniagua*, 646 S.W.3d 821, 827 (Tex. 2022). Once the defendant establishes the applicability of Chapter 95, the burden then shifts to the plaintiff to overcome its limitations on liability. *Id*.

Whether Chapter 95 applies to a claim is a preliminary issue that underlies all other issues. *Phillips v. The Dow Chemical Co.,* 186 S.W.3d 121, 130 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Francis v. Coastal Oil & Gas Corp.,* 130 S.W.3d 76, 83 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Issues of statutory construction raise questions of law that the appellate courts review de novo. *Subaru of America, Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 222 (Tex. 2002); *See First Am. Title Ins. Co. v. Combs,* 258 S.W.3d 627, 631 (Tex. 2008).

### III.    ANALYSIS

GM asserts that summary judgment is appropriate because Baker's sole means of recovery is Chapter 95 of the Texas Civil Practice and Remedies Code, which precludes common-law negligence claims against the property owner. §§ 95.001 and 95.002; ECF No. 42 at 10. GM asserts that Baker is not entitled to recover under Chapter 95 because he has not met all of the statutory elements. ECF No. 42 at 10-21.

4

GM alleges that a dangerous condition in proximity to an improvement may constitute a condition of the improvement itself. ECF No. 42 at 13 (citing *Alba v. CalAtlantic Homes of Tex., Inc.*, No. 02-21-00345-CV, 2022 WL 1420542 at *8 (Tex. App.—Fort Worth, May 5, 2022, no pet.) (citing *Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 785-86 (Tex. 2021)). It argues that because Baker was working on the job box that housed tools and equipment to be used on a chain pull and conveyor belt, both improvements to the property, Baker's claim arises from the "condition of an improvement" at the plant. ECF No. 42 at 14.

Baker responds that Chapter 95 does not apply because his claim concerns the use or condition of a trade fixture, not an improvement. ECF No. 51 at 25-26; *Ineos USA, LLC. v. Elmgren,* 505 S.W.3d 555, 567 (Tex. 2016). Baker asserts that he was hired to work on GM's conveyor belt and other production equipment over a holiday weekend, making the conveyor belt and other production equipment the relevant "improvement." ECF No. 51 at 25. Further, Baker was injured before the shutdown of plant operations began and before any contractors began work on the production equipment itself. *Id.* Therefore, Baker contends that repairing the job box to secure the workers' hand tools constituted an improvement, if any, to a trade fixture, not to any real property. *Id.*

Chapter 95 does not define "improvement," but the Texas Supreme Court has "broadly defined an 'improvement' to include 'all additions to the freehold except for trade fixtures [that] can be removed without injury to the property.'" *Abutahoun v. Dow Chem. Co.,* 463 S.W.3d, 42, 49 (Tex. 2015) (second alteration in original) (quoting *Sonnier v. Chisholm–Ryder Co.,* 909 S.W.2d 475, 479 (Tex. 1995)); *see also Torres v. Chauncey Mansell & Mueller Supply Co.*, 518 S.W.3d 481, 487 (Tex. App.—Amarillo 2017, pet. denied) (concluding that an improvement is not limited to the specific mechanism causing the injury, but rather, the factors that define the

5

improvement's breadth such as the interrelationship of the mechanism with its physical and geographic environments). A claim satisfies this part of § 95.002 only if it "results from a condition or use of the same improvement on which the contractor (or its employee) is working when the injury occurs." *Ineos*, 505 S.W.3d at 567. A workplace may include several different improvements, and each improvement may possess numerous conditions. *Los Compadres*, 622 S.W.3d at 783.

GM cites several cases supporting its argument that "proximity to an improvement can constitute a condition of the improvement itself." ECF No. 42 at 13-15. In *Alba,* the plaintiff was hired to complete masonry work on an unfinished house. 2022 WL 11420542 at *7. He was injured when he fell "while working in a position above ground to construct a house on the jobsite premises… when the railing that he was standing next to broke loose." *Id*. The court determined that the plaintiff was directly exposed to the dangerous condition of a loose 2x4 board because of its close proximity to the improvement on which he was working. *Id.* "[T]he loose 2x4 created a dangerous condition of the brick column itself." *Id.*

In *Ineos*, a boilermaker was sent to replace a valve on a furnace header that Ineos owned. 505 S.W.3d at 559. While doing the work, gas leaked from a pipe valve connected to a different furnace. *Id.* at 559–60. The subsequent explosion injured the boilermaker, and he sued Ineos for damages. *Id.* at 560. He argued that Chapter 95 did not apply because his injuries did not result from the same improvement on which he was working. *Id.* at 566–67. The Texas Supreme Court disagreed, holding that "valves and furnaces, perhaps 'separate' in a technical sense, were all part of a single processing system within a single plant on Ineos's property." *Id.* at 567–68. Rejecting the argument that "each of the connected furnaces constituted a separate improvement," the Court held that the entire system was a single "improvement" under Chapter 95. *Id.*

6

After *Ineos*, the Texas Supreme Court decided *Los Compadres,* in which a subcontractor's workers were electrocuted while drilling holes and pouring concrete pilings for condominiums. 622 S.W.3d at 777. "No one knows exactly what happened to cause the accident," but the workers were lifting rebar and placing one end into the concrete when the other end contacted a live power line. *Id.* at 778. The property owner argued on appeal that the power line was a dangerous condition of the "workplace" on which the workers were working when they were injured. *Id.* at 783.

The Court rejected the "workplace" argument, but noted that "[i]f a dangerous condition, by reason of its proximity to an improvement, creates a probability of harm to one who 'constructs, repairs, renovates, or modifies' the improvement in an ordinary matter, it constitutes a condition of the improvement itself." *Id.* at 785–86 (citing Tex. Civ. Prac. & Rem. Code Ann. § 95.002(2)). The Court held that "the energized power line created a dangerous condition of the piling itself." *Id.* at 786. Thus, the Court concluded that Chapter 95 applied to the negligence claims against the property owner. *Id.* at 790.

Finally, in *Energen Resources Corp.*, *v. Wallace,* the Texas Supreme Court considered "whether a negligence claim can arise from the condition or use of an improvement even when negligence elsewhere is alleged to have contributed to the plaintiffs' injuries." 642 S.W.3d 502, 507 (Tex. 2022). In *Wallace*, a worker completing a water well was injured after natural gas flowing from the well, which was located 500 feet from an oil well that the owner was drilling, caught fire and exploded. *Id.* The injured worker sued, alleging that Chapter 95 did not apply to his claim because the improvement that on which he was working, the water well, was not the same improvement from which his claim arose, the oil well. *Id.* at 507-08. Energen argued that a condition rather than a use of the water well caused plaintiff's damages. *Id.* at 508. The Court

7

found that the "plaintiff's own petition alleges that his damages were caused by negligence arising from a dangerous condition of the water well" on which he was working and held that Chapter 95 applied. *Id.* at 507. The Court noted that "something is a condition of an improvement if it 'affect[s] the "state of being" of' that improvement." *Id.* at 512 (quoting *Los Compadres*, 622 S.W.3d at 785).

GM's proximity argument misses the mark on the facts of this case, and its reliance on the preceding cases is misplaced. Here, there was no geographical or temporal proximity between Baker's work on the job box and the work on the conveyor belt that was set to begin the following day. Additionally, it is not plausible that fabricating a hasp on a job box constituted a "construction, repair, renovation, or modification" of any improvement to real property. See *Moore v. Howmet Corp.,* No. CA 7:03-cv-0215-R, 2005 WL 856852, at *4 (N.D. Tex. Apr. 12, 2005). The details of the incident in which Baker was injured do not meet any criteria set forth in the cases construing Chapter 95 mentioned previously.

First, the wheeled job box was not an improvement as the Supreme Court of Texas defines it. *Ineos*, 505 S.W.3d at 567. It was movable and removable without causing injury to the conveyer belt, GM's plant, or any real property. *Id.* Second, Baker was working in the contractor's fabrication shop located in the plant a day before the work on the conveyor belt was set to begin. *Cf. Painter v. Momentum Energy Corp.,* 271 S.W.3d 388, 399 (Tex. App. —El Paso 2008, pet. denied) ("Drilling and the completion of drilling operations are more properly characterized as an essential part of the construction of a well, as opposed to some preliminary, unrelated task."). Baker was grinding a hasp to lock the job box when the explosion occurred. ECF No. 43 at 47, 51-52; *see Id*. GM gave the job box to the contractors for their general use at the plant a full nine months before the incident at issue. ECF No. 54 at 91, 173, 228. The contractor brought the specific

job box to where Baker worked on it so that "the chain pull guys could put their personal tools away at the end of the day, lock them up and secure them." ECF No. 54 at 84. Fabricating the lock on the job box was a task that was preliminary and unrelated to the conveyer belt work. *Painter*, 271 S.W.3d at 399. Finally, no one from GM asked Baker to put the lock on the job box; Baker's supervisor directed him to do so. *Id.* at 86, 101, 107, 114. GM did not require that the job boxes be locked, nor was a lock on the box necessary for any of the maintenance work on the conveyer belt that Baker was to undertake. *Id.* The gap in the geographical and temporal proximity between the movable job box involved in the explosion and the conveyor belt and other fixtures is too large to bridge. The Court must conclude that Baker's claim falls outside the scope of Chapter 95. *See Ineos,* 505 S.W.3d at 568.

## IV.   CONCLUSION

Baker was not injured while constructing, repairing, renovating, or modifying an improvement to real property so Chapter 95 does not apply. Tex. Civ. Prac. & Rem. Code § 95.002(2); *Moore*, 2005 WL 856852, at *4. Because Chapter 95 is not applicable, it is not necessary for the Court to address whether GM exercised or maintained an adequate level of control over the way Baker performed his work or if it actually knew of the alleged danger or condition. The defense provided in § 95.003 is not available to GM on the facts of this case, and the Court therefore **DENIES** Defendant's Motion for Summary Judgment (ECF No. 41).

It is so **ORDERED** on May 22, 2023.

_Hal R. Ray, Jr._
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

9